Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
09/01/2020 09:07 AM CDT

- 785 -

Nebraska Court of Appeals Advance Sheets
28 Nebraska Appellate Reports
SPRING CREEK HOME v. SHURIGAR
Cite as 28 Neb. App. 785

Spring Creek Home, LLC, a Nebraska limited
liability company, appellee, v. Rhoda
Shurigar, appellant.

___ N.W.2d ___

Filed September 1, 2020.    No. A-19-584.

1. **Contracts: Judgments: Appeal and Error.** The meaning of a contract is a question of law, in connection with which an appellate court has an obligation to reach its conclusions independently of the determinations made by the court below.
2. **Contracts: Public Policy: Judgments: Appeal and Error.** The determination of whether a contract violates public policy presents a question of law, and an appellate court independently reviews questions of law decided by a lower court.
3. **Damages: Appeal and Error.** The amount of damages to be awarded is a determination solely for the fact finder, and its action in this respect will not be disturbed on appeal if it is supported by evidence and bears a reasonable relationship to elements of damages proved.
4. **Contracts.** In interpreting a contract, a court must first determine, as a matter of law, whether the contract is ambiguous.
5. **Contracts: Words and Phrases.** A contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings. A contract written in clear and unambiguous language is not subject to interpretation or construction and must be enforced according to its terms.
6. **Contracts.** Contracts are to be construed according to the sense and meaning of the terms which the parties have used, and if they are clear and unambiguous, their terms are to be taken and understood in their plain, ordinary, and popular sense.
7. ____. When the terms of the contract are clear, a court may not resort to rules of construction, and the terms are to be accorded their plain and ordinary meaning as the ordinary or reasonable person would understand them.

- 786 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
28 NEBRASKA APPELLATE REPORTS
SPRING CREEK HOME v. SHURIGAR
Cite as 28 Neb. App. 785

8. ____. A contract must receive a reasonable construction, and a court must construe it as a whole and, if possible, give effect to every part of the contract.

9. ____. Whatever the construction of a particular clause of a contract, standing alone, may be, it must be read in connection with other clauses.

10. ____. When there is a question about the meaning of a contract's language, the contract will be construed against the party preparing it.

11. **Contracts: Intent.** A court should avoid interpreting contract provisions in a manner that leads to unreasonable or absurd results that are obviously inconsistent with the parties' intent.

Appeal from the District Court for Webster County: STEPHEN R. ILLINGWORTH, Judge. Reversed and remanded for further proceedings.

Richard Calkins, of Calkins Law Office, for appellant.

Gregory D. Barton, of Barton Law, P.C., L.L.O., for appellee.

MOORE, Chief Judge, and RIEDMANN and ARTERBURN, Judges.

ARTERBURN, Judge.

## INTRODUCTION

Rhoda Shurigar appeals from an order of the district court for Webster County that found her personally liable to Spring Creek Home, LLC, for unpaid care expenses incurred by a man for whom she served as a court-appointed guardian. She argues on appeal that the court erred in its interpretation of the contract, that its decision contravenes public policy, and that damages were not sufficiently proved. For the reasons that follow, we reverse the order of the district court and remand the cause for further proceedings.

## BACKGROUND

On October 2, 2017, Spring Creek Home filed a complaint alleging that Shurigar had breached a "Resident Service Agreement" (Agreement) she had signed on her ward's behalf and was therefore personally responsible for the unpaid

- 787 -

Nebraska Court of Appeals Advance Sheets
28 Nebraska Appellate Reports
SPRING CREEK HOME v. SHURIGAR
Cite as 28 Neb. App. 785

charges incurred. Attached to the complaint was a copy of the Agreement, which was signed by Shurigar. It named Timothy Tierney as the "Resident" and Shurigar as the "Responsible Party." Also attached to the complaint were a monthly services statement and other documents demonstrating the amount of damages claimed. Shurigar filed an answer on November 6, 2017.

Shurigar filed a motion to dismiss on March 2, 2018. Meanwhile, Spring Creek Home filed a motion for summary judgment and notice of hearing on March 21. On May 7, a hearing on Spring Creek Home's motion for summary judgment was held, but Shurigar failed to appear. In its order, the court stated that Shurigar had reasonable advance notice of the hearing. The court found that the evidence was undisputed that the Agreement named Shurigar a "'responsible party'" and that she was personally liable for any breach of the Agreement. The court found that there was no genuine issue of material fact as to Shurigar's failure to pay Spring Creek Home charges of $9,923.97 and entered a judgment of that amount in Spring Creek Home's favor.

On May 17, 2018, Shurigar filed a motion to set aside default judgment and application for new trial and an affidavit in support thereof. She stated that proper notice was not given to her for the May 7 hearing. The court determined that even though Spring Creek Home appeared to have sent notice by first-class mail as claimed, there was a question as to whether Shurigar actually received the notice. Moreover, after reviewing the parties' briefs and affidavits, the court determined that Shurigar may have a meritorious defense and that the interests of justice demanded that the case be heard on its merits. Accordingly, on October 4, the court sustained Shurigar's motion to set aside the summary judgment and motion for a new trial.

The court held a trial on March 27, 2019. A copy of the Agreement was admitted into evidence as exhibit 4. At the top of page 1, the Agreement identifies the parties:

- 788 -

Nebraska Court of Appeals Advance Sheets
28 Nebraska Appellate Reports
SPRING CREEK HOME v. SHURIGAR
Cite as 28 Neb. App. 785

Spring Creek Home, LLC
Resident Service Agreement

This agreement is between:    Date: May 20, 2015
Spring Creek Home, LLC
602 Michigan Ave.
Inavale, NE 68952        Resident
                          **Timothy Tierney**
Casey Snell, Administrator    Rhoda Shurigar
Facility Representative        Responsible Party
Hereafter known as the       Hereafter known as the
    "**Facility**"               "**Resident**"

Later on page 1, under "General Provisions," it states:

> A. The Agreement between the Facility and the Resident shall consist of this Resident Service Agreement . . . and any other documents signed by the Facility and the Resident or the Responsible Party.
>
> B. This Agreement is binding on the Facility, the Resident, and the Resident's heirs, personal representatives, and the like.

On page 2, under the heading "Financial Agreement," the Agreement states, "C. The Responsible Party shall pay all charges that have been incurred by the Resident that are not included in the monthly rental." We will enumerate other pertinent provisions of the Agreement as needed in our analysis of the case.

Michaelle Strickland, the chief executive officer of Spring Creek Home, testified that she had drafted the Agreement. She described Spring Creek Home as a residential facility that provided services for people who were diagnosed with severe chronic mental illnesses. She said that most residents were "dual eligible" for government benefits, meaning they received both Medicaid and Medicare benefits. Like those of many residents, Tierney's benefits had been paid directly to Spring Creek Home since he became a resident in May 2015—according to Shurigar. Strickland testified that Tierney had also been receiving benefits under the State's "Aid to Aged, Blind and

- 789 -

Nebraska Court of Appeals Advance Sheets
28 Nebraska Appellate Reports
SPRING CREEK HOME v. SHURIGAR
Cite as 28 Neb. App. 785

Disabled" (AABD) program, but that those benefits terminated in January 2017.

Casey Snell, who began as the administrator at Spring Creek Home in 2012, testified that she personalized their template agreement for Tierney. She signed page 8 of the Agreement as "Facility Representative." Snell discussed Tierney's past-due account and testified that she often worked with residents whose accounts fell behind because it took time for them to recover funds in conjunction with State agencies. As an example, she testified that Spring Creek Home had received a $3,000 payment in a single month, which was much more than usual, because it was for past-due benefits owed to Tierney under the AABD program.

Shurigar testified that she worked as a professional legal guardian and conservator as appointed by the courts. She was appointed Tierney's temporary guardian on May 4, 2015, and appointed his full and permanent guardian on September 14. However, she was never appointed Tierney's conservator. Tierney had been found to be mentally incapacitated due to his mental health and substance abuse issues. Shurigar testified that she intentionally chose Spring Creek Home for Tierney because of its isolation and lack of nearby bars or liquor stores. Additionally, he was known to flee the places he lived. Shurigar called the decision to move Tierney into Spring Creek Home "absolutely strategic" as it made it easier to control his behavior and remove "temptations" from him.

Shurigar said that Spring Creek Home housed many other residents for whom she served as their guardian. She therefore had an existing relationship with Snell and testified that, if Snell was busy or out of town, Snell sometimes got paperwork to her after a resident had already moved into Spring Creek Home. Shurigar testified that she did not remember whether Snell and she signed the Agreement before or after Tierney had actually moved into Spring Creek Home but said that it was close in time.

When Shurigar became Tierney's guardian, he was not receiving benefits under the State's AABD program, but she

- 790 -

Nebraska Court of Appeals Advance Sheets
28 Nebraska Appellate Reports
SPRING CREEK HOME v. SHURIGAR
Cite as 28 Neb. App. 785

said that she filed an application on his behalf as soon as he was placed at Spring Creek Home. He was approved, and Shurigar said that she reapplied for the benefits annually, which renewals were due on June 1 each year. Shurigar said that she was unaware that the State had terminated Tierney's benefits under the AABD program until Snell emailed her. She did reapply for AABD benefits after being informed by Snell of their termination. She subsequently decided to become the payee for Tierney's benefits and pay the provider. She decided to seek a new placement for Tierney after becoming concerned that Tierney was being billed for items for which he was not supposed to be billed.

Shurigar testified that she never signed a guaranty to be financially responsible for Tierney. She said that she would not have signed the Agreement if she thought Spring Creek Home were going to hold her personally responsible for Tierney's debts, and she said that under the Agreement, she did not believe she was financially responsible for Tierney. Shurigar testified that she provided her legal guardianship papers to Spring Creek Home before she signed the Agreement and that she signed the Agreement as Tierney's legal guardian.

The court entered judgment on May 23, 2019. The court recited portions of the Agreement and found that its plain terms were not ambiguous: "It is clear that . . . Shurigar is lumped into the category of a resident at the beginning of the contract." The court found that Shurigar, as a professional guardian, ought to have read the Agreement but clearly had not because it unambiguously made her liable for nonpayment. The court further found that the contract was not contrary to law or public policy because it bound only Shurigar and did not require guardians in all cases to be personally responsible for the debts of their wards. Accordingly, the court entered judgment on behalf of Spring Creek Home and against Shurigar in the amount of $11,836.13.

Shurigar appeals from the district court's judgment.

- 791 -

Nebraska Court of Appeals Advance Sheets
28 Nebraska Appellate Reports
SPRING CREEK HOME v. SHURIGAR
Cite as 28 Neb. App. 785

## ASSIGNMENTS OF ERROR

Shurigar assigns, consolidated and restated, that the district court erred in its interpretation of the parties' Agreement, in its determination that the Agreement was not against public policy, and in its calculation of the amount of damages.

## STANDARD OF REVIEW

[1] The meaning of a contract is a question of law, in connection with which an appellate court has an obligation to reach its conclusions independently of the determinations made by the court below. *Meyer Natural Foods v. Greater Omaha Packing Co.*, 302 Neb. 509, 925 N.W.2d 39 (2019).

[2] The determination of whether a contract violates public policy presents a question of law, and an appellate court independently reviews questions of law decided by a lower court. *Mays v. Midnite Dreams*, 300 Neb. 485, 915 N.W.2d 71 (2018).

[3] The amount of damages to be awarded is a determination solely for the fact finder, and its action in this respect will not be disturbed on appeal if it is supported by evidence and bears a reasonable relationship to elements of damages proved. *U.S. Pipeline v. Northern Natural Gas Co.*, 303 Neb. 444, 930 N.W.2d 460 (2019).

## ANALYSIS

[4,5] In interpreting a contract, a court must first determine, as a matter of law, whether the contract is ambiguous. *City of Sidney v. Municipal Energy Agency of Neb.*, 301 Neb. 147, 917 N.W.2d 826 (2018). A contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings. *Id*. A contract written in clear and unambiguous language is not subject to interpretation or construction and must be enforced according to its terms. *Id*.

[6,7] Contracts are to be construed according to the sense and meaning of the terms which the parties have used, and if they are clear and unambiguous, their terms are to be taken

- 792 -

Nebraska Court of Appeals Advance Sheets
28 Nebraska Appellate Reports
SPRING CREEK HOME v. SHURIGAR
Cite as 28 Neb. App. 785

and understood in their plain, ordinary, and popular sense. See *Gage County v. Employers Mut. Cas. Co.*, 304 Neb. 926, 937 N.W.2d 863 (2020). When the terms of the contract are clear, a court may not resort to rules of construction, and the terms are to be accorded their plain and ordinary meaning as the ordinary or reasonable person would understand them. *Id*.

[8-11] A contract must receive a reasonable construction, and a court must construe it as a whole and, if possible, give effect to every part of the contract. *Labenz v. Labenz*, 291 Neb. 455, 866 N.W.2d 88 (2015). Whatever the construction of a particular clause of a contract, standing alone, may be, it must be read in connection with other clauses. *Id*. When there is a question about the meaning of a contract's language, the contract will be construed against the party preparing it. *Id*. A court should avoid interpreting contract provisions in a manner that leads to unreasonable or absurd results that are obviously inconsistent with the parties' intent. *St. John v. Gering Public Schools*, 302 Neb. 269, 923 N.W.2d 68 (2019).

The parties acknowledge that Spring Creek Home is due some amount that was incurred through Tierney's residency, but they disagree regarding who bears contractual responsibility for the payment of that debt. Shurigar contends that the district court erred in determining that the contract was unambiguous, and she argues in her brief that, based on the admission of parol evidence, she is not liable for Tierney's debts under a correct interpretation of the contract. Spring Creek Home argues and the district court agreed that the Agreement is unambiguous and that its plain terms make Shurigar personally liable for the outstanding debt. We conclude that the Agreement is unambiguous but that, under its plain terms, Shurigar is not personally responsible for the debt related to Tierney.

In support of its arguments, Spring Creek Home first highlights the top of page 1 of the Agreement, which identifies the parties. It argues that Tierney and Shurigar are defined, jointly, as "Resident." While we believe the Agreement's plain terms axiomatically define only Tierney as resident, we are mindful that, if any question exists as to the meaning of the

- 793 -

Nebraska Court of Appeals Advance Sheets
28 Nebraska Appellate Reports
SPRING CREEK HOME v. SHURIGAR
Cite as 28 Neb. App. 785

contract's language, we are to construe it against the drafter, which here is Spring Creek Home.

Before proceeding with our analysis, we note several other portions of the Agreement we find pertinent to resolution of the issue before us. On page 2, under the heading "Termination of Agreement," seven reasons for termination are enumerated, including, "5. Resident develops a medical or other problem which requires complex nursing care or which is not stable or predictable, if the services cannot be provided by an appropriately licensed agency or private duty staff."

On page 5, under the heading "Resident Responsibilities," the Agreement states, "8. . . . Responsible Party is defined as the Resident, the Resident's designee, someone holding a healthcare power of attorney for the Resident, or is the Guardian or Conservator for the Resident." Also on page 5, under the heading "Facility Responsibilities," the Agreement enumerates 12 responsibilities that the facility agrees to perform, including, "12. Record the Resident's weight at least on a quarterly basis."

On page 6 of the Agreement, under the heading "Admission and Discharge Policies," it states:

> 2. No Resident may be admitted without a Resident evaluation and the Resident must agree to a physician's physical evaluation, examination within the first 30 days of admission. The Resident must also agree to other reevaluations as necessary in the opinion of the attending physician, Facility staff, or the Administrator.
>
> 3. A Resident whose condition is medically complex, unstable, or unpredictable may be admitted to or may remain in the facility only if the Resident or Responsible Party assumes responsibility for arranging for the Resident's care through an appropriately Licensed agency or appropriately licensed personnel.

Later on page 6, under the heading "Medication Administration," a box was marked to indicate that the Resident "will not administer his/her own medications" unless a competency test is first administered by a licensed professional.

- 794 -

Nebraska Court of Appeals Advance Sheets
28 Nebraska Appellate Reports
SPRING CREEK HOME v. SHURIGAR
Cite as 28 Neb. App. 785

The heading of page 7 is "Spring Creek Home, LLC RSA Attachment." Under the heading "Resident Goals," nine goals are enumerated, including, for example, "5. Attend [Alcoholics Anonymous] at least once per month if needed." Five enumerated privileges are listed under the heading "Resident Privileges if Goals are achieved," including, "1. Pop on Fridays and special occasions." Two signature lines were given on page 7 of the Agreement: one labeled "Resident Signature" and the other labeled "Signature of Responsible Party." Shurigar signed on the latter. Shurigar also signed page 8 on the line for "Responsible Party," not "Resident."

It is not a reasonable construction for both Tierney and Shurigar to be jointly defined as Resident. The face of page 1 of the Agreement clearly identifies Shurigar as "Responsible Party" while identifying Tierney as "Resident." Moreover, only Tierney fits the common definition of the word "resident" as he, not Shurigar, resided in Spring Creek Home.

Reading the Agreement as a whole and giving meaning to each of its parts further demonstrates that the Agreement's plain terms unambiguously identifies Tierney, not Shurigar, as the resident. On page 2, for example, if Shurigar is the resident, then the Agreement would terminate if Shurigar developed a medical or other problem which requires complex nursing care. If Shurigar is the resident, then, according to page 5 of the Agreement, she would be contractually entitled to be weighed by Spring Creek Home on a quarterly basis. Additionally, page 6 would require that Shurigar, like Tierney, receive a physical within 30 days of admission to Spring Creek Home, and page 6 also would preclude Shurigar from administering her own medications. Page 7 would obligate Shurigar to attend Alcoholics Anonymous meetings if necessary and obligate Spring Creek Home to reward Shurigar with a "[p]op on Fridays" for her attendance. These examples demonstrate that the Agreement itself does not contemplate that the responsible party is the resident.

Spring Creek Home also argues that "under the plain terms of the [Agreement], the 'responsible party' is the 'resident' ***and***

- 795 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
28 NEBRASKA APPELLATE REPORTS
SPRING CREEK HOME v. SHURIGAR
Cite as 28 Neb. App. 785

the resident's 'Guardian.'" Brief for appellee at 12 (emphasis in original). Specifically, Spring Creek Home's argument is based on its reading of language from page 5 of the Agreement: "Responsible Party is defined as the Resident, the Resident's designee, someone holding a healthcare power of attorney for the Resident, or is the Guardian or Conservator for the Resident." Spring Creek Home's argument fails because it reads "and" where the Agreement says "or." By using "or," the sentence at issue provides a number of possible definitions, only one of which may be chosen. Reducing the sentence to the choice at issue in our circumstances, the plain terms of the language on page 5 provide that "Responsible Party is defined as the Resident . . . *or* is the Guardian." (Emphasis supplied.) It is clear from the Agreement that Shurigar was the responsible party, which was defined as the guardian, while Tierney was the resident. Additionally, we note that both pages 1 and 5 of the Agreement refer to both the resident and the responsible party as distinct entities within the same sentence, indicating that they are not one and the same, but instead are separate identities.

The Agreement at issue in this case is unambiguous as it is not susceptible to two reasonable interpretations or meanings. Numerous other examples exist in the Agreement wherein the term resident can only be applied to the actual resident, not the responsible party. And, as we have pointed out, Shurigar signed only the lines of the Agreement designated for the responsible party. Were the resident and responsible party one and the same, there would be no need for two lines. When the Agreement is read and construed as a whole document, it is clear that the term "resident" means Tierney alone. The term "resident" does not encompass Shurigar. The plain and ordinary meaning of the Agreement, read in its entirety, compels this result. To read the term "resident" more broadly than referring to Tierney alone would lead to an unreasonable or absurd result. Therefore, since Shurigar is not the resident, she cannot be held personally responsible for charges the agreement requires the resident to pay.

- 796 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
28 NEBRASKA APPELLATE REPORTS
SPRING CREEK HOME v. SHURIGAR
Cite as 28 Neb. App. 785

Our inquiry does not end here, however. There are two provisions of the agreement which purport to require the responsible party to pay certain charges. Both are found under the heading "Financial Agreement" and are located on page 2. Paragraph C provides: "The Responsible Party shall pay all charges that have been incurred by the Resident that are not included in the monthly rental." Paragraph E provides: "The Responsible Party shall agree to pay a penalty charge of $20.00 for each month the rent is not paid by the 10th of the month due."

We state no opinion as to whether these provisions make the responsible party personally responsible for the enumerated charges. These provisions were not contemplated by the district court in reaching its conclusion. Therefore, we remand the cause to the district court for further consideration. First, the district court must determine whether any of the charges incurred during Tierney's residency fall within the description of paragraphs C or E. If the court determines that charges exist which fall within either of those descriptions, the court must determine whether the evidence was sufficient to determine the dollar amount due. If the evidence was sufficient, the court must then determine whether the agreement makes Shurigar personally responsible for the payment.

## CONCLUSION

Based on the foregoing, we reverse the judgment of the district court. We remand the cause to the district court for further determination consistent with the directions herein.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.