Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
01/15/2021 09:08 AM CST

Jeremy Kaiser, appellant, v. Allstate
Indemnity Company, appellee.
___ N.W.2d ___

Filed October 23, 2020.    No. S-19-858.

1. **Insurance: Contracts.** Interpretation of an insurance policy is a question of law.
2. **Judgments: Appeal and Error.** In reviewing questions of law, an appellate court must reach its own conclusions independent of the lower court's conclusions.
3. **Summary Judgment: Appeal and Error.** An appellate court reviews a district court's grant of summary judgment de novo, viewing the record in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor.
4. **Insurance: Contracts: Presumptions: Proof.** In assessing which party in an insurance dispute bears the burden of proving or disproving coverage, a court must first determine whether the insurance policy presumptively extends coverage to all, or only to specific, perils.
5. **Insurance: Contracts.** A specific perils policy covers limited risks and, by implication, excludes all other risks.
6. ____: ____. An all perils policy impliedly covers all risks except those expressly addressed in the policy's exclusion paragraphs.
7. **Insurance: Contracts: Presumptions: Proof.** Under a specific perils policy, the insured carries the initial burden of proving that a provision in the insurance policy requires the insurer to provide coverage for a specific type of loss. But that initial burden is presumed met in an all perils policy, provided the insured can show that covered property was damaged.
8. **Insurance: Contracts: Proof.** Once the insured's initial burden of proving coverage is met, the insurer bears the burden of proving the applicability of an exclusion under the policy as an affirmative defense.
9. **Insurance: Contracts: Appeal and Error.** An insurance policy is a contract, and an appellate court construes it like any other contract, according to the meaning of the terms that the parties have used.

10. ____: ____: ____. An appellate court gives terms in an insurance policy that are clear their plain and ordinary meaning as a reasonable person in the insured's position would understand them.

11. **Insurance: Contracts.** Terms in an insurance policy that are reasonably susceptible to multiple conflicting meanings are ambiguous and construed in favor of the insured.

12. **Words and Phrases.** Contamination is the act of contaminating, the condition of being contaminated, defilement, pollution, or infection.

13. **Insurance: Contracts.** Simply because multiple provisions in an insurance policy individually exclude coverage for a single peril does not mean that those terms are necessarily ambiguous.

14. ____: ____. Whether terms in an insurance policy are individually ambiguous will depend on the susceptibility of their language to multiple reasonable meanings, not on whether they overlap with each other.

15. **Insurance: Contracts: Proof.** If the insurer meets its burden of proving the applicability of any exclusions under the policy as affirmative defenses, then the burden returns to the insured to prove the applicability of an exception to any exclusions.

16. **Words and Phrases.** Because the phrase "sudden and accidental" is expressed in the conjunctive, it requires both sudden and accidental to be shown.

17. **Insurance: Courts.** When an insured's claim to his or her insurer is for one whole property loss, courts must frame the property loss accordingly, and not by its component parts.

18. **Time: Words and Phrases.** An event occurring over a period of time is not sudden.

19. **Summary Judgment.** Summary judgment is proper when the pleadings and the evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.

20. **Summary Judgment: Appeal and Error.** An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.

Appeal from the District Court for Douglas County: Leigh Ann Retelsdorf, Judge. Affirmed.

Matthew P. Saathoff and Donald E. Loudner III, of Saathoff Law Group, P.C., L.L.O., for appellant.

Leslie S. Stryker Viehman and Brian D. Nolan, of Nolan, Olson & Stryker, P.C., L.L.O., for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Heavican, C.J.

## I. INTRODUCTION

Jeremy Kaiser filed an insurance claim alleging that his tenants damaged his rental house by producing or using methamphetamine indoors. Allstate Indemnity Company (Allstate) denied the claim. The district court granted summary judgment for Allstate, holding that the loss was excluded from coverage under Allstate's insurance policy with Kaiser. Kaiser appeals.

We moved Kaiser's appeal to our docket to decide whether property loss from his tenants' producing or using methamphetamine indoors was a covered peril. We conclude that it is not and affirm the decision of the district court.

## II. FACTUAL BACKGROUND

Kaiser owned real property in Omaha, Nebraska, that he maintained as a rental house. He carried a rental insurance policy for the property through Allstate. According to the policy, Allstate agreed to cover most direct physical loss to the property.

However, as relevant here, paragraphs 12, 13(e) and (f), 18, and 19(d) excluded from coverage any property loss "consisting of or caused by" the following perils:

12. Any type of vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials, [i]rritants, contaminants, or pollutants, [i]ncluding, but not limited to:
    a) lead in any form;
    b) asbestos in any form;
    c) radon in any form; or

d) oil, fuel oil, kerosene, liquid propane or gasoline intended for, or from, a storage tank located at the residence premises.

13. . . .

. . . .

e) Contamination, including, but not limited to, the presence of toxic, noxious, or hazardous gasses, chemicals, liquids, solids or other substances at the residence premises or in the air, land or water serving the residence premises;

f) Smog, smoke from the manufacturing of any controlled substance, agricultural smudging and industrial operations[.]

. . . .

18. Vandalism. However, we do cover sudden and accidental direct physical loss caused by fire resulting from vandalism unless your dwelling has been vacant or unoccupied for more than 90 consecutive days immediately prior to the vandalism.

19. Any act of a tenant, or guests of a tenant, unless the act results in sudden and accidental direct physical loss caused by:

. . . .

d) [S]moke. However, we do not cover loss caused by smoke from the manufacturing of controlled substances, agricultural smudging or industrial operations[.]

(Emphasis omitted.) The Allstate insurance policy further provided that when property loss resulted from multiple causes, the loss was wholly excluded from coverage if "the predominant cause(s) of loss is (are) excluded."

Kaiser did not make regular inspections of his rental house. Beginning in February 2013, he received reports from persons living near the property that the house was being used for drug-related activity.

After his tenants voluntarily surrendered the property on May 1, 2013, Kaiser inspected the house and found evidence

of methamphetamine. Kaiser retained Absolute Bio Recovery Service to conduct preliminary tests of the house. Absolute Bio Recovery Service discovered methamphetamine vapor and residue throughout the house and recommended that the house be decontaminated before it could be safely rented to new tenants.

On May 7, 2013, Kaiser submitted a claim to Allstate for the cleanup costs. On May 8, Allstate denied the claim.

Despite the denial of coverage, Kaiser worked to remediate and decontaminate the house throughout May 2013. He removed flooring, HVAC equipment, and light fixtures from the house, all of which had absorbed methamphetamine vapor and residue. He also hired Meth Lab Cleanup LLC, a company that specialized in restorations of this kind. On May 26, Meth Lab Cleanup certified that the house was again fit for human habitation.

On February 11, 2014, Kaiser filed a complaint against Allstate in the district court for Douglas County. Kaiser asserted two claims: breach of contract and bad faith. According to Kaiser, "[a]t sometime [sic] after April 15, 2012, the Tenants converted the Property into a methamphetamine lab and started producing methamphetamine." According to the complaint, this claim should have been covered by Allstate as "vandalism and malicious mischief," but it was wrongfully denied. Kaiser sought $38,361.80 for remediation costs, lost rent, and compensation from serving as the general contractor overseeing the house's restoration. Allstate timely filed an answer disputing Kaiser's claims.

After some discovery, the parties filed cross-motions for summary judgment. Stating that it lacked "competent evidence of how the damage was actually caused," the district court entered an order denying both motions.

Kaiser filed an amended complaint alleging that he lacked sufficient knowledge as to whether the property loss was caused by his tenants' using or manufacturing methamphetamine. Allstate filed an amended answer in which it specifically

cited, as affirmative defenses, exclusions in paragraphs 9, 12, 13(e) and (f), 18, and 19(d) of its insurance policy. Kaiser and Allstate both filed renewed cross-motions for summary judgment. Kaiser also filed a motion to file a second amended complaint, which the district court denied.

On January 26, 2017, the district court issued an order granting Allstate's motion for summary judgment and denying Kaiser's competing motion. The district court found that Kaiser's tenants had manufactured methamphetamine in the house. Additionally, based on an affidavit from Allstate's expert, a professor of chemistry at the University of Nebraska at Omaha, the district court found that methamphetamine damaged Kaiser's property in two ways: first, "methamphetamine vapor is a toxic chemical, gas or liquid, depending upon the assumed physical state at a particular point in time," and second, "[m]ethamphetamine residue is a contaminant, chemical residue and pollutant." Accordingly, the district court agreed with Allstate that Kaiser's property loss was excluded from coverage under paragraphs 12 and 13(e) and (f) of Allstate's insurance policy. The district court also found that Kaiser's property loss was not covered under paragraph 18 or paragraph 19(d).

Kaiser appealed the district court's summary judgment. This court summarily dismissed the appeal pursuant to Neb. Ct. R. App. P. § 2-107(A)(2) (rev. 2017) because we could not find that the district court had entered a final, appealable order. On remand, the district court issued an order clarifying that its previous order was intended to dismiss both Kaiser's contract cause of action and his bad faith cause of action.

Kaiser then filed the current notice of appeal.

## III. ASSIGNMENTS OF ERROR

Kaiser assigns, consolidated and restated, that the district court erred in finding that (1) Kaiser's property loss was excluded from coverage under paragraphs 12 and 13(e) and (f) of the Allstate insurance policy, (2) Kaiser's property loss

was not covered under paragraph 18 or paragraph 19(d) of the Allstate insurance policy, and (3) summary judgment was improper because a genuine issue of material fact remained as to whether Kaiser's property loss was caused by methamphetamine production or use.

## IV. STANDARD OF REVIEW

[1,2] Interpretation of an insurance policy is a question of law.[1] In reviewing questions of law, an appellate court must reach its own conclusions independent of the lower court's conclusions.[2]

[3] An appellate court reviews the district court's grant of summary judgment de novo, viewing the record in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor.[3]

## V. ANALYSIS

### 1. ALLSTATE INSURANCE POLICY

The issue presented on appeal is whether the district court erred in finding that under the Allstate insurance policy, Kaiser's property loss was excluded from coverage.

[4-6] In assessing which party in an insurance dispute bears the burden of proving or disproving coverage, a court must first determine whether the insurance policy presumptively extends coverage to all, or only to specific, perils.[4] A specific perils policy covers limited risks and, by implication, excludes all other risks.[5] In contrast, an all perils policy impliedly

---

[1] See *Henn v. American Family Mut. Ins. Co.*, 295 Neb. 859, 894 N.W.2d 179 (2017).

[2] See *In re Estate of Adelung*, 306 Neb. 646, 947 N.W.2d 269 (2020).

[3] *Russell v. Franklin County*, 306 Neb. 546, 946 N.W.2d 648 (2020).

[4] See *Poulton v. State Farm Fire & Cas. Cos.*, 267 Neb. 569, 675 N.W.2d 665 (2004) (citing 7 Lee R. Russ & Thomas F. Segalla, Couch on Insurance 3d § 101:7 (1997), and Annot., 30 A.L.R. 170 (1995)).

[5] See *Poulton, supra* note 4.

covers all risks except those expressly addressed in the policy's exclusion paragraphs.[6]

[7,8] Under a specific perils policy, the insured carries the initial burden of proving that a provision in the insurance policy requires the insurer to provide coverage for a specific type of loss.[7] But that initial burden is presumed met in an all perils policy, provided the insured can show that covered property was damaged.[8] Once the initial burden of proving coverage is met, the insurer bears the burden of proving the applicability of an exclusion under the policy as an affirmative defense.[9]

Here, Kaiser characterizes his Allstate policy as an all perils policy. Allstate did not dispute that characterization in its brief or at oral argument. Thus, assuming that Kaiser's characterization is accurate, Kaiser met his initial burden when the parties stipulated that at the relevant time, the damaged property was covered under the Allstate insurance policy. It is, in turn, Allstate's burden to prove that the property loss from Kaiser's tenants' producing or using methamphetamine in the house was specifically excluded from coverage by its policy.

(a) Paragraphs 12 and 13(e) and (f)

The district court found that Allstate met its burden of proof by showing that Kaiser's property loss was caused by the presence of "methamphetamine vapor" and "[m]ethamphetamine residue" in the house. According to the district court, this meant that the property loss was excluded under paragraphs

---

[6] See *id.*

[7] See *id.*

[8] See *Gage County v. Employers Mut. Cas. Co.*, 304 Neb. 926, 937 N.W.2d 863 (2020).

[9] See *id.*

12 and 13(e) and (f) of the Allstate insurance policy because methamphetamine vapor is "a toxic chemical, gas or liquid, depending upon the assumed physical state at a particular point in time," and methamphetamine residue is "a contaminant, chemical residue and pollutant." Kaiser assigns first that this characterization was in error because the terms in paragraphs 12 and 13(e) and (f) are ambiguous.

[9-11] An insurance policy is a contract, and an appellate court construes it like any other contract, according to the meaning of the terms that the parties have used.[10] An appellate court gives terms in an insurance policy that are clear their plain and ordinary meaning as a reasonable person in the insured's position would understand them.[11] But terms that are reasonably susceptible to multiple conflicting meanings are ambiguous and construed in favor of the insured.[12]

We disagree with Kaiser that the terms in paragraphs 12 and 13(e) and (f) are ambiguous. Paragraph 12 specifically excludes coverage for any property loss caused by or consisting of "vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials, [i]rritants, contaminants, or pollutants." And paragraph 13(e) and (f) uses similar language, excluding coverage for any property loss caused by or consisting of "[s]mog" or "[c]ontamination, including, but not limited to, the presence of toxic, noxious, or hazardous gasses, chemicals, liquids, solids or other substances at the residence premises . . . ." (Emphasis omitted.)

[12] Although they are not defined in the insurance policy itself, the relevant terms are contained in standard dictionaries. Contamination is "[t]he action of contaminating, or condition of being contaminated; defilement, pollution,

---

[10] *Van Kleek v. Farmers Ins. Exch.*, 289 Neb. 730, 857 N.W.2d 297 (2014).

[11] *Id.*

[12] See *id.*

infection."[13] The terms in paragraphs 12 and 13(f) are also defined.[14]

Throughout his brief, Kaiser himself repeatedly referred to the property damage as "contamination" and his restoration efforts as "decontamination." In corresponding with Kaiser, the contractors he hired to restore the house also identified the damage they encountered as contamination. In its work plan for the house, Absolute Bio Recovery Service described using a variety of techniques "to address contamination," and in its "Final Report Methamphetamine Decontamination," Meth Lab Cleanup identified the scope of its work as involving a "decontamination and post remedial assessment." At the time, Kaiser did not object to these characterizations of the property loss as contamination. This evidence goes to show that Kaiser, as the insured, reasonably interpreted the term "contamination" as encompassing the type of property damage he experienced.

[13,14] As Kaiser now suggests, definitions of the terms in paragraphs 12 and 13(e) and (f) indicate that several of these terms are synonymous. But his conclusion that the terms are

---

[13] "Contamination," Oxford English Dictionary Online, http://www.oed.com/view/Entry/40057 (last visited Oct. 10, 2020).

[14] See, e.g., "Vapor," Oxford English Dictionary Online, http://www.oed.com/view/Entry/221469 (last visited Oct. 10, 2020); "Fume," Oxford English Dictionary Online, http://www.oed.com/view/Entry/75429 (last visited Oct. 10, 2020); "Acid," Oxford English Dictionary Online, http://www.oed.com/view/Entry/1547 (last visited Oct. 10, 2020); "Toxic," Oxford English Dictionary Online, http://www.oed.com/view/Entry/204104 (last visited Oct. 10, 2020); "Waste," Oxford English Dictionary Online, http://www.oed.com/view/Entry/226027 (last visited Oct. 10, 2020); "Irritant," Oxford English Dictionary Online, http://www.oed.com/view/Entry/99857 (last visited Oct. 10, 2020); "Contaminant," Oxford English Dictionary Online, http://www.oed.com/view/Entry/40053 (last visited Oct. 10, 2020); "Pollutant," Oxford English Dictionary Online, http://www.oed.com/view/Entry/146987 (last visited Oct. 10, 2020); "Smog," Oxford English Dictionary Online, http://www.oed.com/view/Entry/182692 (last visited Oct. 10, 2020).

inherently ambiguous does not follow. Simply because multiple provisions in an insurance policy individually exclude coverage for a single peril does not mean that those terms are necessarily ambiguous.[15] Instead, a well-written insurance policy will likely have terms that overlap, which might support the denial of coverage on several grounds in an appropriate case.[16] Whether those terms are individually ambiguous will depend on the susceptibility of their language to multiple reasonable meanings, not on whether the terms overlap with each other.[17] Kaiser has failed to specifically identify any second meanings to which the terms are reasonably susceptible in context.

Accordingly, Kaiser's argument that the terms in paragraphs 12 and 13(e) and (f) are ambiguous and so should be construed with different meanings than the district court assigned to them is without merit. Like the rest of these terms, "contamination" is readily defined in standard dictionaries, and Kaiser himself used and accepted the term in describing the restoration of his house. The district court did not err in finding that Kaiser's property loss was excluded from coverage as "contamination," among other perils, under paragraphs 12 and 13(e) and (f) of the Allstate insurance policy. Kaiser's first assignment of error is without merit.

### (b) Paragraphs 18 and 19(d)

Kaiser next assigns that even if the district court did not err in finding his property loss was excluded under paragraphs 12 and 13(e) and (f), the district court still erred in not granting him relief under two other paragraphs of the Allstate insurance policy. Specifically, Kaiser points to paragraphs 18 and 19(d). Although paragraph 18 generally excludes from

---

[15] See, e.g., *American Fam. Mut. Ins. Co. v. Wheeler*, 287 Neb. 250, 842 N.W.2d 100 (2014).

[16] See *id.*

[17] See *Henn, supra* note 1.

coverage "vandalism," it provides an exception for "sudden and accidental direct physical loss caused by fire resulting from vandalism." (Emphasis omitted.) Likewise, although paragraph 19 excludes from coverage property loss resulting from most "act[s] of a tenant," paragraph 19 provides an exception for "[a]ny act of a tenant [that] results in sudden and accidental direct physical loss caused by . . . d) smoke." (Emphasis omitted.)

According to Kaiser, his property loss was predominantly caused in accordance with these exceptions. And the insurance policy provides that when there are two or more causes of loss to the covered property, coverage is only excluded if the predominant cause of loss is excluded. Therefore, Kaiser contends that even if his property loss was excluded from coverage under paragraphs 12 and 13(e) and (f) of the Allstate insurance policy, the language regarding two or more causes of loss should provide relief because the perils described in paragraphs 18 and 19(d) were the predominant causes of loss. We disagree.

[15] If the insurer meets its burden of proving the applicability of any exclusions under the policy as affirmative defenses, then the burden returns to the insured to prove the applicability of an exception to any exclusions.[18] Here, as discussed above, paragraphs 18 and 19 contain exceptions to the exclusions for "vandalism" and "act[s] of a tenant." (Emphasis omitted.) In order for the exceptions to those exclusions to apply, Kaiser has the burden to show that the harm was the "sudden and accidental" result of fire or smoke.

In support of his argument that he comes within these exceptions, Kaiser cites to insurance law cases from other jurisdictions in which vandalism has been inferred by tenants' using and manufacturing illegal substances that resulted

---

[18] See *Dutton-Lainson Co. v. Continental Ins. Co.*, 271 Neb. 810, 716 N.W.2d 87 (2006).

in property damage.[19] We need not decide here whether to follow those other jurisdictions because we conclude that Kaiser has failed to show that his property loss was "sudden and accidental."

We have previously construed the phrase "sudden and accidental" in an insurance policy. In *Dutton-Lainson Co. v. Continental Ins. Co.*,[20] we construed the phrase in the context of an exception to a pollution exclusion. After incurring costs from an environmental cleanup of pollutants used in its manufacturing operations over some 37 years, Dutton-Lainson Company (Dutton-Lainson) filed a claim for indemnification with its insurer. Continental Insurance Company (Continental Insurance) denied the claim, however, under an exclusion for losses caused by pollution. In response, Dutton-Lainson claimed that a sudden and accidental exception to the pollution exclusion applied. The parties presented these arguments in district court, and thereafter, the district court granted summary judgment to Continental Insurance. Dutton-Lainson appealed, renewing its argument that the sudden and accidental exception to the pollution exclusion applied.[21]

We rejected Dutton-Lainson's argument. First, we found that "[s]ince the 'sudden and accidental' exception to the pollution exclusion clause [was] expressed in the conjunctive, both requirements must be met for the exception to become operative."[22] We then reviewed how other courts had interpreted the term "sudden" as a necessary component of the phrase:

> Courts have disagreed as to whether "sudden" refers to something temporally abrupt from an objective

---

[19] See, e.g., *Livaditis v. American Casualty Co. of Reading, Pa.*, 117 Ga. App. 297, 160 S.E.2d 449 (1968); *Bowers v. Farmers Ins. Exchange*, 99 Wash. App. 41, 991 P.2d 734 (2000); *Graff v. Allstate Ins. Co.*, 113 Wash. App. 799, 54 P.3d 1266 (2002).

[20] *Dutton-Lainson Co., supra* note 18.

[21] See *id.*

[22] *Id.* at 821, 716 N.W.2d at 97.

standpoint, something unexpected from the subjective standpoint of the insured, or whether the term is ambiguous. In considering the meaning of the term "sudden," several courts have noted that recognized dictionaries differ as to its meaning.[23] For example, we noted that definitions of the term "sudden" varied in recognized dictionaries between having primarily to do with a lack of notice and with a rate of occurrence.[24]

In any event, however, we found that under the terms of the policy, pollution that occurred over a significant period of time was not covered as "sudden."[25] "[A] reasonable person in the position of the insured would understand the term 'sudden,' as found in the context of the qualified pollution exclusion, to refer to the objectively temporally abrupt release of pollutants into the environment."[26] Thus, we affirmed the district court's grant of Continental Insurance's motion for summary judgment. Dutton-Lainson's loss from pollution that occurred over a period of 37 years was not sudden.[27]

---

[23] *Id.*

[24] See *id.* at 821-22, 716 N.W.2d at 97-98 (comparing term "sudden" as defined in "Webster's Third New International Dictionary of the English Language, Unabridged 2284 (1993), [as] 'happening without previous notice or with very brief notice; coming or occurring unexpectedly; not foreseen or prepared for'"; with term "sudden" as defined in "Black's Law Dictionary 1432 (6th ed. 1990) [as] '[h]appening without previous notice or with very brief notice; coming or occurring unexpectedly; unforeseen; unprepared for'"; and with term "sudden" as defined in "Random House Dictionary of the English Language 1900 (2d ed. 1987) . . . as 'happening, coming, made, or done quickly'"). See, also, "Sudden," Oxford English Dictionary Online, http://www.oed.com./view/Entry/193468 (last visited Oct. 10, 2020) ("[h]appening or coming without warning or premonition; taking place or appearing all at once").

[25] See *Dutton-Lainson Co., supra* note 18.

[26] *Id.* at 823-24, 716 N.W.2d at 99.

[27] See *id.* Accord, *Mapes Indus. v. United States F. & G. Co.*, 252 Neb. 154, 560 N.W.2d 814 (1997); *Bituminous Cas. Corp. v. Aaron Ferer and Sons Co.*, No. 4:06CV3128, 2007 WL 2066452 (D. Neb. July 16, 2007).

[16] Our analysis here is similar. As in *Dutton-Lainson*, the Allstate insurance policy expresses the phrase "sudden and accidental" in the conjunctive. Therefore, to carry his burden of proving coverage under paragraph 18 or paragraph 19(d), Kaiser must show that his property loss resulted in direct physical loss that was both "sudden and accidental." Because we conclude that Kaiser has failed to show that his property loss was sudden, we need not determine whether it was accidental.

Kaiser's argument that the property loss was sudden rests on his assertion that as a result of his tenants' producing or using methamphetamine indoors, methamphetamine vapor and residue "quickly bonded to most surfaces throughout the rental house."[28] Because this bonding occurred "quickly," Kaiser would have us infer that the resulting property loss as a whole was sudden. But this argument wrongly frames the issue.

In *Dutton-Lainson*, we could also have framed the property loss as the result of numerous sudden discharges of pollutants over 37 years.[29] Likely, some amount of the pollutants at issue had escaped quickly every day, each time contributing to the ultimate loss for which Dutton-Lainson sought indemnification from Continental Insurance. But we opted against framing the property loss in terms of its smallest components.[30] Instead, because Dutton-Lainson sought indemnification for one property loss—that is, the cleanup from one pollution—we framed it accordingly. And because that one property loss occurred over a period of 37 years, it was not sudden.[31]

---

[28] Brief for appellant at 29.

[29] See *Dutton-Lainson Co., supra* note 18.

[30] See *id.*

[31] See *id.*

[17] Here, too, Kaiser's claim to Allstate is for one whole property loss, not its component parts. Kaiser leased the whole property to tenants. Allstate insured the whole property from certain perils. The tenants produced or used methamphetamine in the house and thereby rendered the house uninhabitable as a whole. Kaiser filed a claim to Allstate demanding payment for the whole loss. Thus, we frame the property loss at issue not by each release of methamphetamine vapor and residue, but by the loss that resulted from their many releases and for which Kaiser sought indemnification. We decline to embrace Kaiser's logic of death by a thousand paper cuts.

Viewed through a proper frame, then, the evidence in the record indicates that Kaiser's property loss as a whole occurred over time, not suddenly. Kaiser himself testified that his tenants resided at the property for more than a year, from April 15, 2012, until May 1, 2013. He received reports throughout the year from persons living near the house that the house was being used for suspicious drug-related activities. On at least one occasion, in April 2013, Kaiser learned that someone living there had "got[ten] in trouble for doing meth last night."

Although he did not know specifically when during that year the tenants began producing or using methamphetamine in the house, Kaiser indicated in his amended complaint that such producing or using could have occurred as soon as April 15, 2012, the day the tenants took possession of the house. Kaiser specifically stated that to the best of his knowledge, the use or production of methamphetamine was ongoing throughout the tenancy: "the Tenants who were occupying the Property *had been using* methamphetamine in the Property and/or *operating* an illegal methamphetamine lab on the Property, unbeknownst to [Kaiser]." (Emphases supplied.) The phrases "had been using" and "[had been] operating" imply that the tenants' use of methamphetamine or operation of a methamphetamine

laboratory in the house occurred in the past but on a continuous, ongoing basis.[32]

It was Kaiser's burden to prove that his property loss occurred "suddenly and accidentally." But Kaiser did not put forth any evidence that his property loss occurred in this way. To the contrary, the evidence that Kaiser himself offered indicates that the loss actually occurred as the result of his tenants' smoking or producing methamphetamine in the house on an ongoing basis over a significant period of time, perhaps up to a year.

[18] But "an event occurring over a period of time is not sudden."[33] Thus, just as we held in *Dutton-Lainson* that pollution occurring over 37 years was not sudden,[34] we now also hold that a property loss from methamphetamine vapor and residue occurring by indoor methamphetamine use or production over a period of months or more is not sudden. A reasonable person in Kaiser's position would not understand "sudden" to refer to a property loss occurring over a period of months. Kaiser has failed to carry his burden of proving otherwise.

Because Kaiser has failed to carry his burden of proving that his property loss was sudden and accidental, he has also failed to carry his burden of proving that his property loss was covered as predominantly caused in accordance with paragraphs 18 and 19(d). The district court did not err in finding Kaiser's property loss was excluded from coverage under paragraphs 12 and 13(e) and (f) of the Allstate insurance policy and

---

[32] See The Chicago Manual of Style ¶ 5.120 (15th ed. 2003); "Past perfect continuous," Cambridge Dictionary Online, http://www.dictionary.cambridge.org/us/grammar/british-grammar/past-perfect-continuous (last visited Oct. 10, 2020) (as defined in grammar section: "[W]e use the past perfect continuous to talk about actions or events which started before a particular time in the past and were still in progress up to that time in the past").

[33] *Dutton-Lainson Co., supra* note 18, 271 Neb. at 823, 716 N.W.2d at 99.

[34] *Id.*

not covered under paragraph 18 or paragraph 19(d). Kaiser's second assignment of error is without merit.

## 2. Summary Judgment

Kaiser next assigns that the district court erred in granting Allstate's motion for summary judgment because a genuine issue of material fact remained as to whether Kaiser's property loss was caused by the tenants' producing or using methamphetamine.

In its order, the district court concluded that the evidence from Allstate's expert indicated that the tenants' methamphetamine production, not use, caused Kaiser's property loss. Kaiser disputes this factual finding. He contends that although in his initial complaint he claimed his property loss was the result of methamphetamine production, he did not have a basis for that conclusion and now believes it could have been methamphetamine use instead. Kaiser accordingly assigns that summary judgment was not proper. We disagree.

[19,20] Summary judgment is proper when the pleadings and the evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.[35] An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.[36]

Here, it is immaterial whether Kaiser's tenants damaged the house by producing or using methamphetamine indoors. As both parties and both parties' experts testified, the cause of loss was "methamphetamine vapor" and "methamphetamine

---

[35] *Arnold v. Walz*, 306 Neb. 179, 944 N.W.2d 747 (2020).

[36] *Id.*

residue." Based on that evidence, the district court correctly concluded that the property loss was excluded from coverage under paragraphs 12 and 13(e) and (f) of the Allstate insurance policy and was not covered under paragraphs 18 and 19(d). Even if, as Kaiser urges, we were to find that a genuine factual dispute remained, the dispositive fact remains that methamphetamine vapor and methamphetamine residue are excluded causes of loss under the Allstate insurance policy. Therefore, whether the methamphetamine vapor and methamphetamine residue were released inside the house through production or through use is immaterial to this court's ultimate conclusions of law.

We concur with the district court's grant of summary judgment. Kaiser's third assignment of error is without merit.

## VI. CONCLUSION

The district court's order granting Allstate's motion for summary judgment is affirmed.

Affirmed.