IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


DEGEORGE V. DIGIORGIO'S SPORTSWEAR


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


JOHN DEGEORGE, APPELLANT,

V.

DIGIORGIO'S SPORTSWEAR, INC., ET AL., APPELLEES.


Filed January 12, 2021.    No. A-20-266.


Appeal from the District Court for Douglas County: JAMES T. GLEASON, Judge. Affirmed.

Brian J. Brislen, Adam R. Feeney, and Ellen K. Geisler, of Lamson, Dugan & Murray, L.L.P., for appellant.

Scott D. Jochim and Matthew W. Harris, of Croker, Huck, Kasher, DeWitt, Anderson & Gonderinger, L.L.C., for appellees.


PIRTLE, Chief Judge, and MOORE and ARTERBURN, Judges.

MOORE, Judge.

## I. INTRODUCTION

John DeGeorge appeals from the order of the district court for Douglas County, which granted summary judgment in favor of DiGiorgio's Sportswear, Inc. (DSI), Timothy DeGeorge (Tim), Anthony DeGeorge (Tony), Christopher Tribulato (Chris), Diana Tribulato (Diana), and Cinque Terre Holdings, LLC (Cinque). Finding no error, we affirm.

## II. BACKGROUND

### 1. PARTIES

DSI is an apparel printing business founded by John in 1970 and incorporated in 2001. The initial shareholders included John and his two sons, Tim and Tony. Chris, a friend of Tim's, purchased shares of the company in 2003. At that point, John held a 34% interest in DSI, which

- 1 -

was divided equally between John and his wife when they divorced in January 2013 (each taking 17%). Tim bought the shares belonging to John's ex-wife and to Tony in 2016. John currently holds a 17% interest, with Tim holding 71% and Chris holding 12%. Diana, Chris' wife, is the current treasurer and a director of DSI, and Cinque is the company which owns the real estate housing DSI's business. Two of Cinque's members are DSI (25% interest) and SDG Investments, L.L.C. (60% interest); Tim and Chris are members of SDG.

Cinque was formed in June 2008 to purchase the real estate housing DSI's business. Cinque receives rental payments from DSI for the business space utilized by DSI; this real property is Cinque's only asset. Cinque does not pay salary or wages to anyone and has never issued any dividend or distribution to its members.

## 2. PREVIOUS CASES

The current case, filed by John in May 2018 against DSI, Tim, Tony, Chris, Diana, and Cinque for, among other things, oppression of his minority interest, is the fourth case filed by him, alleging the same or similar causes of action (both personal and/or derivative) with the same underlying facts arising in 2011 when he was terminated from his employment by DSI.

### (a) First Case

John filed the first case in February 2013, "individually, derivatively, and on behalf of [DSI]," against Tim, Tony, and Chris. John set forth claims for relief for declaratory judgment, conversion, accounting, dissolution of corporation, appointment of receiver, fraud, money had and received, breach of contract (stockholder agreement), breach of fiduciary duty, and self-dealing. After John was given an opportunity to amend his original complaint, the district court dismissed John's amended complaint with prejudice, finding that John's written demand required by Neb. Rev. Stat. § 21-2072 (Reissue 2012) (now found at Neb. Rev. Stat. § 21-277 (Cum. Supp. 2018)) in order to properly plead a derivative claim on behalf of DSI was insufficient.

John appealed, assigning error to the district court's determinations that a demand was required for his accounting action, that a demand was not excused because it would have been futile, and that his demand was insufficient. He also asserted that the district court erred in dismissing his individual claims. This court affirmed, finding no merit to John's assertions on appeal. See *DeGeorge v. DeGeorge*, No. A-13-1071, 2014 WL 7177834 (Neb. App. Dec. 16, 2014).

### (b) Second Case

John filed the second case in October 2015, "individually, derivatively, and on behalf of [DSI]," against Tim, Tony, and Chris. John set forth claims for breach of fiduciary duty, conversion, accounting, dissolution of corporation, money had and received, and appointment of a receiver, first stating these claims individually and then repeating them on behalf of DSI. This second case was dismissed by operation of law for failing to timely perfect service.

### (c) Third Case

John filed the third case in May 2016, "individually, derivatively, and on behalf of [DSI]," against Tim, Tony, and Chris. He asserted the same set of both personal and derivative claims set forth in the second case.

The district court entered an order, dismissing the third case with prejudice. In its order, the court noted that, other than John's assertion that his ownership of DSI shares was less than the percentage of shares owned by him at the time of the first case, his claims were identical to the claims made against the defendants in the first case. The court stated that John had failed again to sufficiently plead how the requirement of a written demand for accounting should be excused. It also noted that John had not shown that he had otherwise met the statutory demand requirements. The court stated further:

> Except as noted above, [John's] claims against the Defendants are identical to the claims made . . . in the [first] case. [The district court] dismissed [John's] Complaint [first case], with prejudice, and his dismissal was affirmed in the Nebraska Court of Appeals. [John] argues that he is not precluded from bringing this case because the Defendants 'have committed new torts' since the dismissal of the [first] case, and the actions of the Defendants complained of in the [first] case have continued since the dismissal.

> While it is true that [John] claims in this [third case] Complaint that his ownership interest in DSI is less than he claimed it was in the [first] case, he has not alleged in his complaint that the demand required . . . has been made since dismissal of the [first case], or how it would have been futile to make a demand. In deciding the issue of the . . . demand, the Nebraska Court of Appeals determined that the demand was not excused under the circumstances, and to establish demand futility, [John] would have to plead with particularity the facts which would demonstrate that proper demand would be excused. In its opinion, the Nebraska Court of Appeals made it quite clear as to exactly what [John] would have to plead in order to demonstrate futility, and he has not done so in this case, whether those facts existed prior to the [first] suit, or since the [first] suit was dismissed. The Court therefore finds that the Defendants' motion to dismiss [John's] Complaint should be granted under the doctrine of claims [sic] preclusion, or res judicata, as the [first] dismissal by [the district court] was rendered by a court of competent jurisdiction, and was a final judgment, on the merits, involving the same parties as involved in this case."

John filed a motion to reconsider, arguing that the third case was different from his first case because he was asserting individual claims in the third case (and not just derivative claims). The district court denied John's motion to reconsider, and John did not appeal that ruling.

### 3. CURRENT CASE

#### (a) Complaint

On May 10, 2018, John filed the complaint in the current case, naming DSI, Tim, Tony, Chris, Diana, and Cinque as defendants. We have referred to them throughout as the "Appellees." John alleged that the Appellees "[i]n recent years" had barred him from participation in the operation or management of DSI, had failed and refused to provide him with full access to the

books and corporate records of DSI, and had failed for many years to provide him with his K-1 tax documentation. He alleged that he had not received any monetary benefits from his shareholding in DSI for many years and had had to take on other work in order to support himself. John alleged that the Appellees had mismanaged, wasted, and improperly used DSI's corporate funds by purchasing vehicles and real estate for personal use, paying salaries and other compensation in excess of market rates to shareholder employees, and self-dealing; that they had funneled DSI assets and/or funds to Cinque; and that they were misapplying and wasting DSI's assets, had gained control of DSI, and were acting in a manner illegal, oppressive, and contrary to the interests of John, who had been "singled out for exclusion from participation in, and the economic benefits of, DSI." John set forth eight claims for relief, alleging oppression by DSI and the individual Appellees; breach of fiduciary duty by DSI and the individual Appellees; conversion by all Appellees; accounting by DSI; breach of bylaws by DSI and the individual Appellees; money had and received by all Appellees; aiding and abetting breach of fiduciary duty by Cinque; and tortious interference by Cinque.

(b) Motion to Dismiss

The Appellees filed a motion to dismiss pursuant to Neb. Ct. R. Pldg. § 6-1112(b)(6). During the hearing on that motion, the district court received into evidence copies of pleadings, orders, and other material relating to the previous cases filed by John. On December 7, 2018, the court entered an order, denying the motion to dismiss, finding that John's claims in the present case were individual claims belonging to John alone and were not derivative actions sought to be brought on behalf of the corporation. The court further ruled that in none of the preceding actions did John assert individual claims against the Appellees, and it stated that any issues of res judicata (claim preclusion) and issue preclusion were not applicable.

(c) Motions to Strike and for Summary Judgment

After the Appellees filed their answer, the district court entered a scheduling order, setting deadlines for certain actions by the parties, including the filing of amended pleadings (June 28), the completion of "fact discovery" (September 16, 2019), and the filing of dispositive and nondispositive pretrial motions (October 7 and 28, respectively).

On July 19, 2019, the Appellees filed a motion for summary judgment.

On July 29, 2019, John filed an amended complaint without leave of the district court. The amended complaint added claims against all of the Appellees for dissolution of DSI and the appointment of a custodian. The Appellees subsequently filed a motion to strike the amended complaint.

At the start of the August 7, 2019, hearing on the Appellees' motions, the district court first heard argument with respect to a motion to continue filed by John. The court granted the continuance, but also addressed a request by the Appellees to stay the progression order in light of the new claims raised in the amended complaint. The court stated its views that the progression order did not "obviate the obligation to get leave of Court to file an amended pleading" and that regardless of resolution of the lawsuit under the original complaint, "an amendment to the operative Complaint which asks for new relief separate and apart from what was previously sought and relief which is always available . . . is not timely." The court stated, "Basically, I think you

need to start a different action if you want to dissolve the corporation. This [the present case] is basically an accounting and damage action." However, the court declined to make a dispositive ruling and directed the parties to arrange the continued hearing date.

During the continued hearing on the Appellees' summary judgment motion, the parties offered and the district court received numerous exhibits, including pleadings, orders, and other material relating to the previous cases, as well as a deposition of John and the exhibits to that deposition. John's attorney noted that he had made certain objections during the deposition. The court stated that it would rule on such objections when it read the deposition but that if the objection was "well taken," the court would "just ignore the material."

During the continued hearing, the district court also heard further argument from the parties with respect to the Appellees' motion to strike John's amended complaint. The court then ruled on the motion to strike, stating:

It is my view that the scheduling order, while it . . . specifically states a deadline for amending pleadings, that nonetheless, such amendment must be done with leave of the Court. So the motion to strike the Amended Complaint is granted without prejudice . . . and the Court is also of the view that the two new causes of action are, in effect, inconsistent with the relief sought in the initial eight. And so it is the Court's view at this point in time that while there may be a basis, the Court is unaware at this time regarding the dissolution question. Because of the necessary statutory deadlines involved it is inconsistent with the current claims to be brought in the same action. So by that, I'm saying as far as I'm concerned . . . you're perfectly free to start a separate action for dissolution . . . but it will not be part of this action through the purported Amended Complaint. The Amended Complaint is stricken.

On February 27, 2020, the district court entered an order granting the Appellees' motion for summary judgment. In its order, the court noted the prior cases filed by John, starting in 2013, and his deposition testimony that he knew or and was aware of all of the claims he was presenting against the Appellees in the calendar year 2011. The court was satisfied, contrary to its prior order ruling on the motion to dismiss, that all of the claims proffered by John were derivative claims and were not personal claims. Accordingly, the court found that John could not sue on his own behalf for the injuries to the corporation. Additionally, the court found that all of these derivative claims had been disposed of previously in the prior lawsuits and stated that it need not re-analyze those lawsuits since the prior disposition would be "res judicata of these claims." Finally, the court found that even if the claims were not derivative claims and were personal claims, they were time barred since they were known to John more than 7 years before the present case was commenced.

### (d) Motion to Compel

On October 8, 2019 (after the summary judgment hearing but prior to entry of the court's order granting summary judgment), John filed a motion to compel discovery responses, seeking to compel the production of the individual Appellees' bank statements and income tax returns "from January 1, 2012 to present." During the hearing on this motion, the district court denied it on the grounds that the motion was filed after the deadline to complete discovery as set forth in the court's

progression order (September 16, 2019) and that the requested information was irrelevant to John's claims for relief.

### III. ASSIGNMENTS OF ERROR

John asserts, reordered, that the district court erred in (1) granting the Appellees' motion to strike his amended complaint, (2) denying him leave to amend, (3) denying his motion to compel production of the individual Appellees' bank statements and tax returns, (4) overruling his objections to questions to him at his deposition, and (5) granting the Appellees' motion for summary judgment.

### IV. STANDARD OF REVIEW

Prior to the adoption of Nebraska's current pleading rules, whether a motion to strike a petition should be sustained was considered a question of law. See *Nuss v. Alexander*, 257 Neb. 36, 595 N.W.2d 263 (1999). Motions to strike entire pleadings are still covered by statute, rather than the civil pleading rules, so we have also applied the same standard in reviewing the motion to strike John's amended complaint. See, Neb. Ct. R. Pldg. § 6-1112(f), comment; Neb. Rev. Stat. § 25-913 (Reissue 2016). On a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below. *Benjamin M. v. Jeri S.*, 307 Neb. 733, 950 N.W.2d 381 (2020).

An appellate court reviews a district court's denial of a motion for leave to amend a complaint for an abuse of discretion. *Eadie v. Leise Properties*, 300 Neb. 141, 912 N.W.2d 715 (2018). However, an appellate court reviews de novo an underlying legal conclusion that the proposed amendments would be futile. *Id.*

Generally, the control of discovery is a matter for judicial discretion, and decisions regarding discovery will be upheld on appeal in the absence of an abuse of discretion. *Yeransian v. Willkie Farr*, 305 Neb. 693, 942 N.W.2d 226 (2020). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by such rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility. *Tilson v. Tilson*, 307 Neb. 275, 948 N.W.2d 768 (2020).

An appellate court reviews a district court's grant of summary judgment de novo, viewing the record in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Kaiser v. Allstate Indemnity Co.*, 307 Neb. 562, 949 N.W.2d 787 (2020). An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Id.*

## V. ANALYSIS

### 1. AMENDED COMPLAINT

John asserts that the district court erred in granting the Appellees' motion to strike his amended complaint and in denying him leave to amend. On July 29, 2019, John filed an amended complaint without leave of the court. John argues that since the court's scheduling order stated that "the parties shall file any amended pleadings and shall join any additional parties to the action by not [sic] later than 6/28/19," he did not need to seek leave from the court to file his amended complaint. He also argues that the parties agreed to a 30-day extension of the filing deadline and references email correspondence attached to his motion for a continuance. We note that July 28 was a Sunday.

The Nebraska Supreme Court has held that a motion to strike a pleading, pursuant to § 25-913, may be directed only to a pleading filed in violation of a court's order or a rule of practice or procedure prescribed either by statute or by the court in which the pleading is filed. See *Hecker v. Ravenna Bank*, 237 Neb. 810, 468 N.W.2d 88 (1991). Here, John filed his amended complaint without leave of the court. Neb. Ct. R. Pldg. § 6-1115(a), states that after an answer is filed, a party may amend the party's pleading "only by leave of court or by written consent of the adverse party, and leave shall be freely given when justice so requires."

John also argues that the district court abused its discretion in denying him leave to amend. A district court's denial of leave to amend pleadings is appropriate only in those limited circumstances in which undue delay, bad faith on the part of the moving party, futility of the amendment, or unfair prejudice to the nonmoving party can be demonstrated. *Eadie v. Leise Properties*, 300 Neb. 141, 912 N.W.2d 715 (2018). However, as noted above, this is not a situation where John sought leave to amend and then was denied. An appellate court will not consider an issue on appeal that was not presented to or passed upon by the trial court. *In re Guardianship & Conservatorship of J.F.*, 307 Neb. 452, 949 N.W.2d 496 (2020).

In granting the motion to strike the amended pleading, the district court observed that the two new claims for relief included in John's amended complaint were inconsistent with the relief sought in the original complaint. The court made it clear that John was free to file a separate action seeking dissolution of DSI. John filed his amended complaint after the deadline established in the scheduling order and after the Appellees had filed a motion for summary judgment on the original complaint. His amended complaint was filed without leave of the court and sought to add two new claims for relief. Under the circumstances presented here, we find no error in the court's granting of the motion to strike.

### 2. MOTION TO COMPEL

John asserts that the district court erred in denying his motion to compel production of the individual Appellees' bank statements and tax returns. The court's scheduling order required that all fact discovery was to be completed by September 16, 2019, and that all nondispositive pretrial motions be filed by October 28. After receiving responses to discovery, John filed a motion to compel the individual Appellees to produce their personal tax returns and bank statements. The court denied the motion to compel on the ground that it was "late" when filed after the close of

discovery but before the deadline for nondispositive pretrial motions and also on the grounds that the requested discovery was irrelevant.

John argues that the district court applied the wrong deadline in determining that his motion was not timely. He argues that his motion to compel was a nondispositive trial motion, rather than part of discovery, and that it was timely since it was filed on October 8, 2019, within the deadline for nondispositive trial motions. He also argues that the information sought was discoverable and relevant as "likely to reveal information providing a more complete picture of [the individual Appellees'] financial dealing that are not necessarily apparent from DSI and Cinque's financials." Brief for appellant at 42.

We disagree with John's assertion that his motion to compel was not a discovery motion. "A party, upon reasonable notice to other parties and all persons affected thereby, may apply for an order compelling discovery" as provided for in Neb. Ct. R. Disc. § 6-337(a). The district court did not abuse its discretion in determining that John's motion to compel was untimely. A trial court has broad discretion to make discovery and evidentiary rulings conducive to the conduct of a fair and orderly trial. *Beran v. Nebraska Ortho. & Sports Medicine*, 28 Neb. App. 686, 948 N.W.2d 796 (2020). See, also, *Putnam v. Scherbring*, 297 Neb. 868, 878, 902 N.W.2d 140, 147 (2017) ("'proposed scheduling orders have to mean something'"). John's motion to compel was filed not only after the fact discovery deadline set forth in the scheduling order, but also after the summary judgment hearing (albeit prior to entry of the court's order granting summary judgment). He sought to compel the production of the individual Appellees' bank statements and income tax returns "from January 1, 2012 to present." The court did not abuse its discretion in denying John's motion. Beyond noting that John did receive the corporate tax returns during discovery, we do not address his arguments as to relevancy further. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it. *Benjamin M. v. Jeri S.*, 307 Neb. 733, 950 N.W.2d 381 (2020).

### 3. EVIDENTIARY RULING

John asserts that the district court erred in overruling his objections to questions to him at his deposition. Although the court did not make explicit rulings on the specific objections referenced by John in his brief, it stated at the summary judgment hearing that it would not consider any evidence properly objected to, and the court clearly relied upon the relevant portion of John's deposition testimony in granting summary judgment. To constitute reversible error in a civil case, the admission or exclusion of evidence must unfairly prejudice a substantial right of a litigant complaining about evidence admitted or excluded. *Brown v. Jacobsen Land & Cattle Co.*, 297 Neb. 541, 900 N.W.2d 765 (2017).

In his deposition, John was asked, "Are the claims that were in that [first] lawsuit the same as you're bringing in this case?" After his attorney objected as to form and foundation, John replied, "I don't know exactly if they're similar or not." John was then asked, "Are the factual bases, like the underlying facts of those particular claims filed in [the first case], the same as the ones you're bringing in this case?" John's attorney objected as to form and foundation, and John replied affirmatively, also stating, "It hasn't changed." Later in the deposition, John was asked, "And your testimony is that all of these cases are based on the same general underlying facts,

- 8 -

correct?" to which he replied, "Yes, I would say so." He was also asked, "Okay, There's no difference in terms of the factual predicate for this lawsuit, for example, than any of the prior ones that you filed, correct?" and John replied, "No, no difference." John's attorney objected on the bases of form and foundation to these questions as well.

John argues that these questions were "vague and ambiguous, asked for a legal conclusion, and were treated as admissions where John's knowledge and understanding of his claims is immaterial." Brief for appellant at 35. We disagree with this portrayal of the nature of the questions, and John's understanding of the facts that led to the filing of the current case was well within his personal knowledge. "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the testimony of the witness himself." Neb. Rev. Stat. § 27-602 (Reissue 2016). John was essentially asked whether there were any different facts underlying the current case than there were underlying the previous cases, and he responded multiple times that there were not. This was information within John's personal knowledge, and the district court did not err in considering it.

4. SUMMARY JUDGMENT

John asserts that the district court erred in granting the Appellees' motion for summary judgment.

Summary judgment is proper when the pleadings and the evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Kaiser v. Allstate Indemnity Co.*, 307 Neb. 562, 949 N.W.2d 787 (2020).

(a) Were John's Claims Derivative?

After initially determining that John had alleged individual claims in this case, the district court determined in its summary judgment order that all of John's claims were derivative and not personal. The court noted that John could not sue on his own behalf for injury to the corporate entity. Because the derivative claims had been disposed of previously in the prior cases, the court did not reanalyze those lawsuits, finding that the prior dispositions were "res judicata of these claims."

A derivative action is a suit brought by a shareholder to enforce a cause of action belonging to the corporation. *McGill v. Lion Place Condo. Assn.*, 291 Neb. 70, 864 N.W.2d 642 (2015). As a general rule, a shareholder may not bring an action in his or her own name to recover for wrongs done to the corporation or its property. *Streck, Inc. v. Ryan Family*, 297 Neb. 773, 901 N.W.2d 284 (2017).

John argues that the district court erred when it found his claims to be derivative. He argues that each of his claims brought in this case are individual, direct claims and that he did not allege harm to the corporation, but harm to himself individually based on the violation of duties owed to him as a DSI shareholder. He also argues that because the claims in this case are individual, this suit was not subject to the procedural demand requirement of derivative actions. See *Kubik v. Kubik*, 268 Neb. 337, 683 N.W.2d 330 (2004) (in order to state derivative action, shareholder must allege fact that demand has been made or that such demand would be futile).

In order to establish an individual harm to support a claim, the shareholder must allege a separate and distinct injury or a special duty owed by the party to the individual shareholder. *Lindsay v. Fitl*, 293 Neb. 677, 879 N.W.2d 385 (2016). Even if a shareholder establishes that there was a special duty, he or she may only recover for damages suffered in his or her individual capacity, and not injuries common to all the shareholders. *Id.* Even though all shares of stock of a corporation may be owned by a small number of shareholders or by one shareholder alone, a shareholder cannot sue individually concerning rights which belong to the corporation. *Id.*

If the shareholder properly establishes an individual cause of action because the harm to the corporation also damaged the shareholder in his or her individual capacity, rather than as a shareholder, such individual action may be maintained. *Trieweiler v. Sears*, 268 Neb. 952, 689 N.W.2d 807 (2004). It is only where the injury to the plaintiff's stock is peculiar to him or her alone, such as in an action based on a contract to which the shareholder is a party, or on a fraud affecting him or her directly, and does not fall alike upon other shareholders, that the shareholder may recover as an individual. *Id.*

In the first three cases, John named both himself and DSI as plaintiffs and brought suit against Tim, Tony, and Chris, stating that he did so, "individually, derivatively, and on behalf of [DSI]." Here, he has named only himself as plaintiff and in addition to Tim, Tony, and Chris, has also named Diana, DSI, and Cinque as defendants, and he does not specifically state that any of his claims are brought in a derivative capacity. However, the character in which one is a party to a suit, and the capacity in which a party sues, is determined from the allegations of the pleadings and not from the caption alone. *McGill v. Lion Place Condo. Assn.*, 291 Neb. 70, 864 N.W.2d 642 (2015). If the capacity in which a party sues is doubtful, a court may examine the complaint, the pleadings as a whole, and even the entire record. *Id.*

John's complaint included eight alleged claims for relief, based on allegations of misconduct by the individual Appellees as officers of the corporation and based on improper actions by DSI and Cinque. He alleged oppression by DSI and the individual Appellees in that the individual Appellees had seized control of DSI and barred him from participation in the business and from obtaining any monetary benefits of his shareholding, that DSI had failed to provide all shareholders with financial documentation, and he alleged that the individual Appellees had mismanaged, wasted, and improperly used corporate funds, which actions had prejudiced John and the value of his shareholding. John alleged that the individual Appellees and DSI breached fiduciary duties owed to John. He alleged that all of the Appellees had converted money and other assets, damaging John's interests. John alleged that DSI and the individual Appellees had breached certain requirements of DSI's bylaws and that all Defendants had money rightfully belonging to John, in that the individual Appellees and DSI had withheld from him the economic benefits of his ownership, retaining them or distributing them to the individual Appellees for their benefit, and that economic benefits of John's shareholding had been funneled to Cinque. Finally, John alleged that Cinque had aided and abetted the other Appellees in their breaches of fiduciary duty and had tortuously interfered with John's business relationship with DSI by accepting funds and assets rightfully belonging to him. John requested damages, an accounting, and access to the books and records of DSI.

John argues that these are individual claims; however, simply framing his allegations in terms of damage to himself as an individual as opposed to damages to the corporation or to all shareholders does not demonstrate that his complaint actually asserts any individual claims for relief. As we determined in John's appeal of the first case, most of the allegations raised in the complaint in the present case are against the individual Appellees based on their status as officers and employees of the corporation. And, although some of these claims are also framed as claims against DSI or Cinque, John has not demonstrated that these claims are not for actions that affect the corporation and/or all shareholders equally. In short, it is apparent that the claims are all claims asserted by John on behalf of DSI, as derivative claims. John has not demonstrated that he has alleged any separate and distinct injury or any special duty owed to him, aside from the rights of the corporation. John's assertion that the claims asserted are individual fails. Even if John has stated some individual claims, claim preclusion still applies to bar John's claims, as discussed further below, since he did not appeal the third case.

(b) Were John's Claims Barred by Claim Preclusion?

The Appellees argue that the district court correctly determined that all of John's claims in the current case were barred by the doctrine of claim preclusion because they were derivative in nature and were based on the same operative facts as his prior cases. They argue further that even if John properly asserted individual claims in this case, those individual claims are also barred by the doctrine of claim preclusion because John had previously asserted individual claims in the third case, which were dismissed with prejudice and which ruling John failed to appeal. We agree.

Claim preclusion bars relitigation of any right, fact, or matter directly addressed or necessarily included in a former adjudication if (1) the former judgment was rendered by a court of competent jurisdiction, (2) the former judgment was a final judgment, (3) the former judgment was on the merits, and (4) the same parties or their privies were involved in both actions. *Marie v. State*, 302 Neb. 217, 922 N.W.2d 733 (2019). The doctrine of claim preclusion bars relitigation not only of those matters actually litigated, but also of those matters which might have been litigated in the prior action. *Id.* The doctrine of claim preclusion rests on the necessity to terminate litigation and on the belief that a person should not be vexed twice for the same cause. *Id.*

The former judgments against John were rendered by courts of competent jurisdiction (District Court for Douglas County and Nebraska Court of Appeals). The prior judgments (including the dismissal of John's alleged individual claims in the third case, which he did not appeal) were also final judgments on the merits. See, *Eadie v. Leise Properties*, 300 Neb. 141, 912 N.W.2d 715 (2018) (dismissal with prejudice operates as rejection of plaintiff's claims on merits and claim preclusion bars further litigation); *Cole v. Clarke*, 10 Neb. App. 981, 641 N.W.2d 412 (2002) (judgment of dismissal based on failure of claimant to state cause of action is considered judgment on merits, even where by amendments good cause of action might be stated).

The parties in the current action and the three previous cases are either identical or in privity with parties to those cases. Privity requires, at a minimum, a substantial identity between the issues in controversy and a showing that the parties in the two actions are really and substantially in interest the same. *Risor v. Nebraska Boiler*, 274 Neb. 906, 744 N.W.2d 693 (2008). John has been

a plaintiff and Tim, Tony, and Chris have been defendants in all four cases. John included DSI as a plaintiff in the first three cases and named DSI as a defendant in the current case.

Diana and Cinque are the only parties that were not named in the previous cases, but because they are in privity with the other Appellees, the doctrine of claim preclusion also applies to them. Diana is an officer and director of DSI. See *Young v. Rohrbough*, 88 Neb. 101, 129 N.W. 167 (1910) (judgment against corporate directors who have complete control of corporation's affairs precludes subsequent action against corporation based on same facts). Cinque is owned at least partially by DSI and an entity of which Tim and Chris are members. And, clearly, DSI, Tim, and Chris were involved in the prior lawsuits. See *McGill v. Lion Place Condo. Assn.*, 291 Neb. 70, 864 N.W.2d 642 (2015) (basis of doctrine of res judicata is that party to be affected, or someone with whom he or she is in privity, has litigated or has had opportunity to litigate same matter in former action).

With respect to Diana and Cinque we also note certain testimony in John's deposition. John was unable to articulate the basis for any claims against Diana, stating, "I don't know why her name's on there" and "I have nothing against [her]." When asked about his claims against Cinque, John initially stated, "If [Cinque] is a partner in [DSI], which they were not when I was there, and my lawsuit stems from 2011 on, then they would be inserted in there. . . ." When informed that Cinque was not a shareholder of DSI, John was unable to articulate further the nature of his claims against it, simply stating, "I don't know." When he was asked again later in the deposition what his claims against Cinque were, he responded, "No, I do not have any claims against [Cinque]. They were not involved at the time."

As discussed above, John's claims are derivative. He has still failed to sufficiently plead how the demand requirement of § 21-277 should be excused and has not shown that it was met at any point before or after the dismissal of the first case. In his motion to reconsider the district court's ruling in the third case, John alleged that he was asserting individual, and not just derivative, claims. But the court denied John's motion to reconsider with prejudice, and he did not appeal. John's claims in the present case are either identical to claims brought in the previous cases or are matters which might have been litigated in those actions. We agree with the court's conclusion that the claims raised by John in the current case were barred by claim preclusion.

### (c) Were John's Claims Barred by Statutes of Limitations?

John argues that his claims are not time barred by the applicable statutes of limitations because he has alleged continuing torts which the Appellees have committed on an ongoing basis. He also argues that the Appellees are equitably estopped from asserting a statute of limitations defense. Given our resolution of the previous two questions, we need not address John's assertions with respect to the court's statute of limitations findings. See *Benjamin M. v. Jeri S.*, 307 Neb. 733, 950 N.W.2d 381 (2020) (appellate court is not obligated to engage in analysis that is not necessary to adjudicate case and controversy before it).

### VI. CONCLUSION

The district court did not err in granting summary judgment in favor of the Appellees.

AFFIRMED.